Harrison G. TRAVIS, Petitioner-Appellee,

v.

SCHWARTZ MANUFACTURING CO., a Corp., Respondent-Appellant.

Harrison G. TRAVIS, Petitioner-Appellant,

v.

SCHWARTZ MANUFACTURING CO., a Corp., Respondent-Appellee.

Nos. 10995–10996.

United States Court of Appeals Seventh Circuit.

Nov. 4, 1954.

Timothy T. Cronin, U. S. Atty., Howard W. Hilgendorf, Asst. U. S. Atty., Milwaukee, Wis., Edward V. Ryan, U. S. Atty., Jersey City, N. J., Harry M. Leet, Atty., Dept. of Labor, Washington, D. C., for Travis.

John W. Emmerling, Milwaukee, Wis., John P. Nash, Manitowoc, Wis., for Schwartz.

Before MAJOR, FINNEGAN and LINDLEY, Circuit Judges.

MAJOR, Circuit Judge.

This action was instituted June 18, 1948, by plaintiff (petitioner), Harrison G. Travis, under the Army Reserve and Retired Personnel Service Law of 1940, 54 Stat. 858, as amended, 50 U.S.C.A. Appendix, § 403(d),[1] to enforce his right to reemployment by Schwartz Manufacturing Co. of Two Rivers, Wisconsin, the defendant (respondent). The court by its judgment rendered July 20, 1953 awarded damages to plaintiff in the amount of $32,911.65, together with interest thereon at the rate of 5% per annum from July 1, 1948. The damages thus awarded covered the period only from July 1, 1947 to June 30, 1948. By the same judgment the court denied plaintiff's asserted right to restoration of his former position with the defendant and his right to damages for a period in excess of one year. In No. 10995, defendant appeals from that portion of the judgment awarding damages to the plaintiff, and in No. 10996, plaintiff appeals from that portion of the judgment denying him restoration to his former position and from the refusal to award damages for a period in excess of one year.

Defendant in its appeal urges that the judgment against it be reversed (1) because of plaintiff's fraud and perjury (A) under the clean hands doctrine, and (B) because plaintiff is morally disqualified for reemployment under the Act; (2) because plaintiff did not satisfy the requirements of the Act with respect to (A) having a position in the employ of defendant, (B) leaving such position to enter military service and (C) receiving a certificate of service; (3) because the offers made by defendant to plaintiff relative to reemployment discharged any duty which defendant owed to plaintiff, and (4) because the trial court, assuming that plaintiff was entitled to an award of damages, erred in the method used in computing the damages awarded.

Plaintiff in his cross-appeal attacks the judgment upon the ground (1) that the court was under a mandatory duty to order plaintiff's reinstatement in the absence of facts showing that plaintiff was unfit or unwilling to resume his previous employment, and (2) that the court erroneously limited plaintiff's recovery of damages to a period of one year.

1. Now 50 U.S.C.A.Appendix, § 459.

Unfortunately, the record in this long drawn-out controversy reveals much bitterness. Charges and counter-charges have been made of fraud and deceit which do no credit to either side. The case was heard by Judge Robert E. Tehan, who during the course of the trial rendered four separate opinions on different phases of the case, which occupy some sixty-two pages of the printed record. Those opinions disclose the thorough analysis made of the voluminous testimony, oral and documentary, and the careful and meticulous consideration given to the issues in dispute. Our study of the record in connection with the briefs of the respective parties leads us to the firm conclusion that the result reached by the district court was as fair and just as could reasonably be expected, taking into consideration the multiplicity and perplexities of the questions involved.

The mere statement of the contested issues advanced by the defendant shows that they are, with certain exceptions subsequently noted, issues of fact. These factual issues, however, are argued here as though this were a trial *de novo*, notwithstanding defendant's disclaimer to the contrary. Our function as a reviewing court is only to ascertain whether such findings are clearly erroneous. We are thoroughly convinced that they are not, even though as to some the record might support a different result. Furthermore, it is important to note that the district judge did not embrace proposed findings submitted by either of the parties, as is sometimes done, but, as his written opinion discloses, made his own findings after a careful weighing and evaluation of the evidence. This being the situation, no good purpose could be served in relating even in a general way the conflicting and controversial evidence upon which such findings rest and we shall make no such attempt.

Plaintiff started to work for defendant in 1933, first as a salesman of cotton buffing wheels (buffs), and later also as a salesman of cotton filter discs (dairy). He was compensated solely on a commission basis except for a few months in 1934 and 1935, when he was paid a salary of $100 per month to call on dairy accounts. He continued to work for defendant as a salesman until January 15, 1942, when he entered the military service as a Second Lieutenant. He spent 5½ years in the service, being released from active duty on June 18, 1947. Plaintiff was a graduate of West Point and spent most of his period in service as an instructor at that institution. His home prior as well as subsequent to the time of his entry into military service was Atlantic Highlands, New Jersey. Plaintiff was promised by defendant that his commissions would be continued on a 50% basis while he was in military service and this promise was performed in part. At or about the time of his release from military service, plaintiff requested of defendant that he be restored to his prior position. Defendant refused to make such restoration, so it is alleged, and this action was instituted by plaintiff.

Defendant corporation was incorporated in 1923 and was founded by Sam Schwartz of Two Rivers, Wisconsin, now deceased, and his son, Simon Schwartz, now president of the corporation. Later the company was joined by two other sons, Myron and Bernard Schwartz. The father died in 1936. In 1943, Myron sold his stock to Simon and severed his connection with the corporation. He organized and conducted a competing company until his death, which occurred prior to the trial in the instant case. Bernard joined the company in 1930, and was discharged in July, 1944, at which time he owned a 25% stock interest in the company. He also organized a competing company. Bernard was a witness for the plaintiff, and the district court attached much weight to his testimony. After Bernard's connection with the company was severed and while plaintiff was in military service, a Mr. Sullivan was employed, who took a prominent part in the company's management. The rec-

ord reveals that there was much ill feeling not only between plaintiff and the defendant but also between Bernard and his brother, Simon, which appears to have resulted from the means employed to effect the discharge of Bernard.

The fraud issue raised by defendant has numerous facets. One of the issues in controversy was the territory to which plaintiff had been assigned as a salesman of defendant's products. The importance of this issue lies in the fact that it was incumbent upon plaintiff to prove the territory he had prior to his military service as a prerequisite to his right, after release therefrom, to a restoration of his previous position or one of like status. Plaintiff, apparently for the purpose of showing what his territory consisted of, introduced an exhibit known as the "log book," which purported to record in itemized form his business trips day by day during 1940 and 1941. Defendant introduced letters and telegrams sent by plaintiff during this period which disclosed, judging from the places from which they were sent, that plaintiff was not on numerous dates at the places shown by the "log book." Defendant asserts that the "log book" was thus proved false in 73 separate instances. The "log book" evidently was kept by plaintiff to be used in the making of his income tax returns.

■ On the issue of plaintiff's fraud, defendant claims that plaintiff, when cross-examined concerning his income tax returns, invoked the privilege against self-incrimination. The record does not support this contention. It shows that during such examination plaintiff's counsel suggested that plaintiff might choose to claim his privilege against self-incrimination. There is nothing in the record, however, to show that plaintiff did so; in fact, every question propounded to him by counsel was answered. It is asserted that plaintiff repudiated his income tax returns in particulars relative to the status which he occupied with the defendant, that is, whether he held a position with the defendant or was an independent contrac-

tor. Reference will later be made to this feature of defendant's contention. It is asserted that plaintiff in his amended petition as well as in his answers to interrogatories claimed as a part of his exclusive territory what is referred to as "southern territory," which claim at the trial was abandoned when plaintiff conceded that he was not entitled to the "southern territory." We see no indication of fraud in that circumstance. It must be a novel theory that a plaintiff in a law suit commits fraud by claiming more than he is entitled to, even though later he makes an admission to that effect.

Plaintiff's fraudulent conduct is also shown, so it is asserted, because he claimed in his income tax returns, as deductions, business expenses larger than those shown in reports which he made to the defendant. It is also asserted in connection with the charge of fraud that plaintiff testified falsely as to the extent and manner of the coverage which he gave to his territory and that he had not during the time of his engagement with defendant sold non-competitive products.

■ The matters which we have mentioned, as well as others of minor importance as shown in the record, do no credit to the plaintiff. The trial court, however, found that plaintiff's conduct did not amount to fraud which would require a dismissal of his action, as requested by defendant, and we cannot hold that his finding on this point was clearly erroneous. We agree with the reasoning of the district court that the charges relied upon by the defendant as demonstrating fraud on the part of plaintiff were in the main impeaching matters which went to the weight and credit to be given his testimony. And it is evident from the district court's opinion that he gave it little, if any, weight except wherein it was corroborated by other testimony.

On the fraud issue, defendant places great reliance upon the decision of this court in Levine v. Berman, 178 F.2d 440. The distinction between the two

cases, however, is quite marked. Here, as shown, the trier of the facts has found that plaintiff's alleged fraudulent conduct was not such as to bar his action, and we accept that finding. In the Levine case the trier of the facts held that the plaintiff's conduct was tainted with such deceit and bad faith as to bar his recovery. We accepted the finding in that case. Moreover, a material factor in the Levine case was that it was before this court on a previous occasion, in which we ordered the restoration of the plaintiff to his former position. 161 F.2d 386. After our mandate, plaintiff refused an offer by his employer to restore him to his former position. There was a question in that case as to whether plaintiff was entitled to recover damages after having refused the position which was offered him. It appears that this question was not specifically answered but that plaintiff's refusal was treated as a part of and in connection with other circumstances upon which the Master's finding of bad faith and fraud was predicated.

■ In connection with defendant's charge of fraudulent conduct, it is argued that plaintiff's disloyalty and bitterness toward the company would relieve it of any duty to restore him to his former position. The materiality of this argument is not discernible in view of the fact that the judgment under attack does not direct that he be reinstated. Neither does the fact that plaintiff has over such a long period refused to accept other employment militate against him other than in mitigation of damages, which was utilized by the court for that purpose. The reason assigned for his refusal in that respect is not without merit, that is, that he knew no business other than as a salesman in the highly specialized field occupied by him as a salesman for the defendant and that he feared to accept employment with a competing company lest his loyalty to defendant be placed in question. In this connection it is fair to state that among the welter of unfavorable charges directed at plaintiff, he was a tiptop salesman, recognized by the defendant as such, and it is hardly to be doubted that his efforts constituted an important factor in the development and growth of defendant's business.

Defendant's contention that plaintiff did not meet the requirements of the Act essential to the maintenance of his action revolves largely around the issue as to whether plaintiff prior to his entry into military service was an employee or an independent contractor. While the Act does not mention these terms, it has been frequently held, as admitted by plaintiff, that the term "position" used in the Act excludes an independent contractor. Defendant argues that plaintiff met all the criteria of an independent contractor as set forth in Brown v. Luster, 9 Cir., 165 F.2d 181, 185, and Plomb Tool Co. v. Sanger, 9 Cir., 193 F.2d 260, 263. We think this issue has the most merit of any of the factual issues argued by the defendant. By picking here and there, defendant does find support for each of the criteria common to an independent contractor. The court in its opinion, however, enumerates other criteria inconsistent with such a status. It is pointed out, for instance, that in the beginning of his employment plaintiff was an employee with a salary of $100 per month and that there is no evidence of any change in his relationship with defendant other than the commission basis for determining his compensation; that plaintiff was directed to attend conventions and trade activities with his expenses paid by defendant; that defendant requested frequent reports of plaintiff's activities and itineraries and made suggestions and gave directions to him on all phases of the business. It is further pointed out that at one time defendant included plaintiff's name with other employees listed under the Social Security Act, 42 U.S.C.A. § 301 et seq., and that a Social Security card was issued to plaintiff, listing him as an employee of the defendant; that plaintiff was held out by the defendant as its eastern sales manager and was referred to by Simon Schwartz in a

written document as "part and parcel of our organization," and that plaintiff was required to carry and pay for liability coverage for defendant on account of the automobile used in his work, and on one occasion when plaintiff was injured while engaged in his work as a salesman, defendant reported it as an injury to a payroll employee.

■■ It is true defendant explains, or attempts to do so, some of the findings and observations of the district court upon which rests its conclusion that plaintiff occupied a position with the defendant within the meaning of the Act. Most of the discussion, however, is directed at the evaluation to be placed upon disputed evidentiary facts, which was in the domain of the district court. Courts have been admonished that the Act is to be liberally construed in favor of the returning veteran. Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 285, 66 S.Ct. 1105, 90 L.Ed. 1230. In National Labor Relations Board v. Hearst Publications, Inc., 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170, the court was concerned with whether "newsboys" were independent contractors or employees under the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. The court renounced the contention that their status was to be determined by the common law concept of what constituted an independent contractor but held that it must be determined in the light of the relief which Congress sought to provide. The same reasoning is applicable here and when so applied, we think the district court correctly concluded that plaintiff occupied a "position" with the defendant.

■ Defendant further argues that in any event plaintiff at the time of his entry into the military service did not "leave a position," within the contemplation of the Act. This contention rests largely on the fact that plaintiff being stationed while in service in or near the territory which he had long served continued in a limited way to make sales, and while in service received gross commissions from the defendant in the amount of $39,221.29. After deducting necessary business expenses, he had a net income for that period of $13,156.79, as shown by his income tax returns. Plaintiff entered the military service January 15, 1942, with no promise on the part of defendant to pay him commissions while in service. However, defendant's president, on February 25, 1942, wrote to plaintiff, advising him that his commissions would be continued on an approximately 50% basis. This promise was kept, however, only during the first year, and after that time commissions were paid only upon one account which plaintiff had been instrumental in obtaining for defendant. It is not discernible how a promise to pay commissions made subsequent to plaintiff's entry into military service would affect his status at the time of such entry. Moreover, it has been held that compensation paid a veteran during his period of service does not affect his rights under the Act. Loeb v. Kivo, D.C., 77 F.Supp. 523; Id., 2 Cir., 169 F.2d 346; Dacey v. Bethlehem Steel Co., D.C., 66 F.Supp. 161; Whitver v. Aalfs-Baker Mfg. Co., D.C., 67 F.Supp. 524. Defendant's president, while plaintiff was in military service, further wrote him as follows, "I am anxiously waiting the day when you can be spared from the Service and again become a vital and important cog in the personnel of the Schwartz Manufacturing Co." Of the cases cited by the defendant in support of its contention on this point, the one most relied upon is McClayton v. W. B. Cassell Co., D.C., 66 F.Supp. 165. In that case, however, the veteran was the first vice president of the alleged employer and, as the court pointed out, was in reality a part of management and did not hold a position (employee) within the terms of the Act. This case and other cases cited by the defendant are readily distinguishable. We agree with the district court that there is no merit in this contention.

■ Defendant contends that plaintiff did not bring himself within the terms of the Act because he had not re-

ceived a "certificate" showing that he had satisfactorily completed his period of military service within the ninety-day period fixed by the Act within which the veteran could make application for reemployment. No question is made but that plaintiff served honorably while on active duty in the Army from January 15, 1942 to June 18, 1947. The order relieving him from active duty directed the issuance of Certificate 53–98, which was the form of the certificate of satisfactory service. It appears that the failure to issue the certificate as directed was an administrative oversight which, when called to the attention of the War Department, was promptly corrected, but after the expiration of the ninety-day period. Undoubtedly the certificate requirement as a prerequisite to the right to make application for reemployment is so that the veteran may show that he has satisfactorily completed his period of service. No cases are cited on the point, and we know of none. To hold, however, that the failure to issue the certificate prior to the expiration of the ninety-day period constitutes a bar to plaintiff's action would, under the circumstances presented, require a strained and unreasonable construction of the Act which we are unwilling to adopt.

█ Defendant relies heavily upon its contention that even though it be concluded that it owed plaintiff the duty of reinstatement under the Act, such duty was discharged by numerous offers of reemployment, all of which were rejected by the plaintiff. In this connection it is argued that the court erred as a matter of law in holding that plaintiff was entitled to be restored to the same position, ignoring defendant's right to offer him a comparable position. There are statements in the court's opinion which furnish some basis for this argument; however, the court heard the testimony of several witnesses as to what was stated at numerous conferences between the parties relative to plaintiff's reemployment and, after an analysis of such testimony, found " * * * that no firm and definite offer was ever made either in writing or orally, and hence there was nothing the petitioner could accept or refuse."

Any attempt to relate or analyze the testimony on the issue as to whether a definite offer was made by the defendant would unduly prolong this opinion. Undoubtedly there was testimony offered by the defendant, particularly by its witness Sullivan, which would support a finding contrary to that made. The trial court, however, was seriously critical of his testimony, and we think for good reason. Sullivan, as heretofore noted, had become connected with the defendant in a managerial capacity subsequent to plaintiff's entry into military service. It was Sullivan who on behalf of defendant conducted negotiations with plaintiff relative to his reemployment. The record discloses that Sullivan on one occasion stated that plaintiff would not be reemployed as long as he (Sullivan) was connected with the company. While defendant makes a rather plausible argument in support of its position now under discussion, we are not convinced that the finding of the district court above quoted is clearly erroneous, and it must be accepted. It follows that the point of law previously mentioned becomes academic because in any event defendant was under obligation to make plaintiff a definite offer, whether it be the position previously held or one that was similar.

It has not been mentioned but we think it is of some significance that defendant upon plaintiff's return from the service recognized that he was entitled to restoration. The controversy between the parties resulted from their dispute as to plaintiff's territorial rights prior to his entry into military service. During the negotiations incident thereto, no question was raised that plaintiff was disqualified, that he was not an employee of the defendant, that he did not leave a position when he entered military service or that he was not in possession of a certificate of service. Without holding or intimating that the defendant waived

any of these defenses, its failure to raise such questions at an appropriate time detracts materially, so we think, from the force of the position sought to be maintained in this court.

■ Without discussion, we approve the method employed by the court in determining the amount of damages awarded plaintiff for the period from July 1, 1947 to June 30, 1948, and hold that interest was properly allowed on such award. See Loeb v. Kivo, D.C., 77 F. Supp. 523; Id., 2 Cir., 169 F.2d 346. Other questions raised and argued by the defendant have been considered and found to be without merit.

■ This brings us to plaintiff's cross-appeal from that portion of the judgment denying restoration to his former position and from the refusal to award damages for a period in excess of one year. These two issues obviously raise questions of law and are so closely related that they may be appropriately considered together. The Act provides for restoration of a returned veteran for a period of one year, during which he cannot be discharged without cause and, upon a failure or refusal of an employer to make such restoration, compensation may be awarded to the veteran "for any loss of wages or benefits suffered by reason of such employer's unlawful action." It is evident that the Act protects a veteran from discharge only for one year after restoration and that after the expiration of that period, there is nothing which prevents an employer from discharging him, with or without cause.

■ We have heretofore held that defendant violated the Act by its failure or refusal to restore plaintiff to his former position. If it had done so, plaintiff would have been entitled to retain such position only for a period of one year, that is, from July 1, 1947 to June 30, 1948. Because of defendant's refusal to do so, plaintiff, as heretofore shown, has been awarded compensation for that period of one year in a substantial amount. Plaintiff insists on this cross-appeal that the court erred in refusing to order his restoration for a period of one year and for compensation during the intervening period, this notwithstanding that more than seven years have elapsed. The situation is extraordinary in many ways, particularly in the fact that the litigation has extended over such a long period of time, during which plaintiff apparently made no effort to seek other employment. Plaintiff's contention, if adopted, would require, so we think, a strained and unrealistic application of the Act. We say this even though we know of no case directly in point on either of the issues which plaintiff presents.

However, it has often been held under varying circumstances that a veteran after the expiration of the year is entitled to recover only compensation for that year. We cite a few of such cases. Smith v. Lestershire Spool & Mfg. Co., D.C., 86 F.Supp. 703; Zaversnik v. Union Pac. R. Co., D.C., 95 F.Supp. 209; Williams v. Dodds, 9 Cir., 163 F.2d 724; Heller v. Inter-boro Savings & Loan Ass'n, 3 Cir., 166 F.2d 83; Houghton v. Texas State Life Ins. Co., 5 Cir., 166 F.2d 848; Spearmon v. Thompson, 8 Cir., 173 F.2d 452.

Plaintiff contends, however, that the cases which so hold are no longer the law since the decision in Oakley v. Louisville & Nashville Railroad Co., 338 U.S. 278, 70 S.Ct. 119, 94 L.Ed. 87. It is asserted that this decision supports plaintiff's contention that he was entitled to an order of restoration and an allowance for compensation during the years which have followed. We do not so understand the Oakley case. The Act provides for restoration "to a position of like seniority, status and pay". The sole question before the court in the Oakley case was the seniority rights of the restored veteran after the expiration of a year. The lower court had held that such seniority rights expired with the year. The court, referring to its previous decisions, stated, 338 U.S. at page 283, 70 S.Ct. at page 122: "We

said, in effect, that this provision protected him not only from the total loss of that position by 'discharge' from it 'without cause,' but that it also protected him, for one year, against the loss of certain other benefits incidental to his restored position."

The court pointed out that during the one year period the veteran was entitled to be accorded the same rights as to seniority as though he had remained in civilian employment and that he was entitled to retain the same seniority status after the expiration of the year. In other words, the grant of seniority status during the year is permanent, not temporary. To deprive him of that status after the year would be to deprive him of a benefit which accrued during the year, which would amount to a discrimination; the seniority status thus established for the veteran continued in the same manner as would the seniority status of an employee who had not been in the service. It is not discernible how the right to restoration or for compensation after the expiration of the year exists, because the employer is without right to reduce the seniority status of the employee whether a veteran or non-veteran. Especially is this so in view of the fact that after the expiration of the year the veteran is subject to discharge without cause, the same as any other employee.

As heretofore stated, we think the conclusion of the district court as embodied in the judgment under attack was as fair and just as could reasonably be expected. If the ill feeling and bitterness, manifested by the parties in such pronounced fashion, could be eliminated, we suspect that they would each be satisfied with the judgment, plaintiff that he fared as well as he did and defendant that the recovery against it was not more.

The judgment appealed from is in all respects

Affirmed.