314 F.2d 260
 114 U.S.App.D.C. 255
 Roger W. WHEELER, Jr., et al., Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent, George W. Ball,
et al., t/a Noathern Virginia Sun Publishing
Company, Intervenors.
George W. BALL et al., t/a Northern Virginia Sun Publishing
Company, Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent, Roger W.
Wheeler, Jr., et al., Intervenors.
 Nos. 16757, 16937.
 United States Court of Appeals District of Columbia Circuit.
 Argued Nov. 8, 1962.
Decided Jan. 10, 1963.
 
 Mr. Seymour J. Spelman, Alexandria, Va., for petitioners in No. 19757 and intervenors in No. 16937.
 Mr. Philip W. Amram, Washington, D.C., with whom Messrs. Gilbert Hahn, Jr., Bruce G. Sundlun and Mark B. Sandground, Washington, D.C., were on the brief, for petitioners in No. 16937 and intervenors in No. 16757.
 Mr. Melvin J. Welles, Attorney, National Labor Relations Board, of the bar of the Court of Appeals of New York pro hac vice, by special leave of court, with whom Messrs. Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen., Counsel, and Warren M. Davison, Attorney, National Labor Relations Board, were on the brief, for respondent.
 Before FAHY, BASTIAN and BURGER, Circuit Judges.
 BURGER, Circuit Judge.
 
 
 1
 The appeal in case No. 16937 is from a decision and order of the National Labor Relations Board in which it found petitioners guilty of unfair labor practices and ordered that petitioners reinstate employees discriminatorily discharged, who are petitioners in No. 16757. The employer, Northern Virginia Sun Publishing Company, claims in case No. 16937 that it was denied a fair hearing in violation of its rights to due process because the Trial Examiner excluded proffered evidence, denied cross-examination of certain adverse witnesses and excluded rebuttal evidence which was tendered by the employer.
 
 
 2
 In case No. 16757 the employees seek review of the Board's remedial order and contend that the Board abused its discretion in framing the back pay order.
 
 
 3
 The consolidated complaint issued by the General Counsel charged the employer with violations of Labor Management Relations Act, 8(a)(1) and 8(a)(3), 29 U.S.C. 158(a)(1), 158(a)(3) (1958). No charge of refusal to bargain was made. Labor Management Relations Act, 8(a)(5), 29 U.S.C. 158(a)(5) (1958). The alleged coercion and discriminatory discharges took place for a period of several weeks after February 28, 1958, the termination date of the bargaining agreement between the employer and the Columbia Typographical Union No. 101. At the hearing before the Trial Examiner, the General Counsel and the charging parties were allowed to adduce considerable evidence relating to the period of bargaining before February 28. After the employer objected to this testimony on the grounds that it was irrelevant because no charge relating to bargaining had been filed, the Trial Examiner made the following explanation:
 
 
 4
 'That is right. But in order to understand what happened on March 9th, 10th, and the other days in March that you have indicated, it is necessary that the background of the matter be given to the Trial Examiner so he may evaluate what happened. 'And for that reason only we will let this into the record.'
 
 
 5
 At one point when the employer's counsel attempted to cover the same ground on cross-examination, the Trial Examiner sustained an objection by the General Counsel for the reason that collective bargaining negotiations were not material to the charge being litigated. There are numerous other instances in the record where the Trial Examiner prevented the employer from developing 'background' evidence on cross-examination after it had been received on direct examination on behalf of the employees.[1]
 
 
 6
 In his Intermediate Report, the Trial Examiner attempted to disclaim reliance on the testimony relating to bargaining, about which the employer was not allowed to cross-examine.
 
 
 7
 The complaint does not allege a refusal to bargain in good faith: the undersigned took no evidence regarding the actual bargaining between the parties and bases no findings on any such evidence which may have crept into the record; any references to the bargaining between the parties are merely made in order to present an understandable picture of the matters covered by the allegations in the complaint.
 
 
 8
 The Conclusions of the Intermediate Report show reliance of this 'background' evidence in the following statements:
 
 
 9
 'The Respondent had no intention of renewing its contract with the Union or entering another under conditions acceptable to the Union * * *. 'Although the contract between the Respondent and the Union as well as the negotiations surrounding it are not properly within the purview of this report; as 'background' the contract negotiations are germane to the issues.'
 
 
 10
 These observations and others of a similar character are in conflict with the seeming effort to disclaim relevance of the negotiations or the Examiner's statement that he 'took no evidence regarding the actual bargaining between the parties and bases no findings on any such evidence * * *.' Even a cursory examination discloses that many pages of the record are devoted to these preliminary events.
 
 
 11
 If these events and conversations were 'necessary' to show 'motivation'[2] or 'to present an understandable picture' or to aid the Trial Examiner to 'evaluate what happened,' to use his own words, basic fairness required that both litigants have equal apportunity to present their respective versions.
 
 
 12
 The Board reviewed and affirmed the evidentiary rulings of the Trial Examiner. In effect the Board affirmed the finding of discriminatory discharge relying largely on acts of the employer prior to February 28, 1958, including, among other things, the fact that the employer had ordered new equipment and engaged six 'reserve' replacements and 11 permanent replacements without notifying the union or the employees. It concluded 'these facts and the other factors relied upon by the Trial Examiner, amply support the findings of (employer's) discriminatory motivation for the subsequent lay offs and discharges.' The Board disclaimed reliance on the bargaining history evidence upon which the Trial Examiner relied, but viewing the record as a whole we cannot say the excluded evidence could have no bearing on the issues. The Board may, of course, reject findings of the Trial Examiner and ordinarily this prerogative will not be disturbed on judicial review. However, in the present case we cannot make an evaluation of the Board's action without the evidence of bargaining history from both parties.
 
 
 13
 We find it difficult to understand how the Board could dissociate the Examiner's findings and recommendations from the evidence of bargaining history which loomed so large to the Examiner. The refusal to allow the employer to cross-examine on the subject and to present his version of that subject led to a record weighted unfairly against one party. This constituted a denial of due process which can be remedied only by a remand to supplement the record and as supplemented it must be reexamined by the Board.
 
 
 14
 Since the hearing upon which the Board's order was based was incomplete we cannot consider the claims of petitioners Wheeler, et al., in No. 16757 on this record and order. Their rights are not prejudiced by this determination and they may file a timely appeal from any future order of the Board relating to this litigation.
 
 
 15
 The Board's order is vacated in Nos. 16937 and 16757 and the cases are remanded to the Board for proceedings not inconsistent with this opinion.
 
 
 16
 FAHY, Circuit Judge (dissenting).
 
 
 17
 The Board decided that the newspaper publishing company, the petitioning employer, violated the provisions of the Act which make it an unfair labor practice for an employer 'to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title'[1] and 'by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization * * *.'[2]
 
 
 18
 The employer contends that the record before the Trial Examiner contains evidence which should not have been taken and omits evidence that should have been taken. The difficulty with this argument is that the events to which such evidence refers are not relevant to the Board's decision. The hearing was not like a trial by jury where the fact finder may be prejudiced by testimony of 'other acts of misconduct.' The Trial Examiner may have been in error in listening to only part of a story, but this is not ground for refusing to enforce the Board's order if the whole story was not material to the Board's decision. The facts upon which the Board actually relied are not in dispute and petitioner does not argue that he was denied the opportunity to dispute them. We quote the language of the Board's decision as follows:
 
 
 19
 'The Board * * * adopts the findings, conclusions and recommendations of the Trial Examiner with the following additions and modifications.
 
 
 20
 'We agree with the Trial Examiner that the Respondents violated Section 8(a) (1) and 8(a)(3) of the Act by the discharge, or lay off, of 14 of its employees on various dates in March 1959, as fully set forth in the Intermediate Report.[2] '2 In finding discriminatory motivation, we do not rely, as did the Trial Examiner in part, on the fact that the Respondents broke off negotiations on February 28, 1959, the day the contract expired in view (of a certain provision in the bontract) * * * Similarly, in view of the Trial Examiner's exclusion of evidence offered by Respondents concerning the negotiations, we make no finding concerning whether, or when, the actual installation of the equipment was revealed to the Union during the negotiations. It is, in any event clear that Respondents had formerly ordered the new equipment and engaged 11 permanent and six 'reserve' replacements for its employees, while actually concealing these steps, and without notifying its employees, or their representative, of the employees' imminent replacement by nonunion personnel. These facts, and the other factors relied upon by the Trial Examiner, amply support the findings of Respondents' discriminatory motivation for the subsequent lay offs and discharges.[11]
 
 
 21
 The 'other factors' referred to, the quoted phrase being emphasized in the majority opinion, are certain events of March 1st, including the presence of armed guards at the plant and indication that the company expected the union to strike.[3]
 
 
 22
 The majority opinion states that an evaluation of the Board's action cannot be made without the evidence of bargaining history, and that the Board relied largely on acts of the employer prior to February 28. But the case is not one of an unfair labor practice based upon a refusal to bargain or a bad faith failure to renew a collective bargaining agreement. If it were then a full account of the bargaining history would no doubt be necessary. But this is a case of discriminatory firings of union men after February 28. Between March 1st and 10th the company laid off or fired 14 union men and replaced them with nonunion men; and on March 11th the other ten union men went out on strike because of these firings. On the first of March new equipment was discovered to be in the plant and with it new men were on the job when the regulars reported for work. Some prior arrangements necessarily had been made by the employer in order that the company could bring about this state of affairs on that date. To this extent only can it be said that the Board relied upon acts of the employer prior to March 1. The Board made no finding 'whether, or when, the actual installation of the equipment was revealed to the Union during negotiation.' However, the Board does claim that prior to March 1 the employer did not reveal to the Union the fact that it was engaging new men or replacements. So far as this may be said to be reliance on acts of the employer prior to February 28, it is sufficient to add that the record fully supports the reliance, and petitioner does not contend that the facts are otherwise.[4]
 
 
 23
 Indeed, all that petitioner contends is that it should have been allowed to show that before the expiration of the collective bargaining agreement at the end of February petitioner had made known its desire to reduce the costs of production in its plant by installing new automated equipment and that the union's response was unreasonable and uncompromising in its demands with regard to wage scales, jobs and procedures.[5] In other words the petitioner contends not that it did not do the things attributed to it as of the period March 1 through 10, but that a motivation for this conduct was to be found in the labor-management relations of the period before March first.
 
 
 24
 Assuming petitioner could make such a showing it would not help its legal position. It is at bottom a claim of economic necessity; and this is not enough to relieve the employer of unfair labor practices based on discrimination because of union activity or membership. Allis-Chalmers Mfg. Co. v. N.L.R.B., 162 F.2d 435 (7th Cir., 1947). And 'refusal to hire for an available job * * * (is) clearly discriminatory.' Radio Officers' Union of Commercial Telegraphers Union AFL v. N.L.R.B., 347 U.S. 17, 39, 74 S.Ct. 323, 335, 98 L.Ed. 455 (1954). And see also N.L.R.B. v. National Broadcasting Co., 150 F.2d 895 (2d Cir., 1945). The discrimination here is clear in the conduct of the company on and after March 1, conduct which shows its unlawful purpose and motivation at that time. Management is not free to make wholesale replacements of union employees merely because the union opposes new rates of pay or new techniques. These must first be put into effect and the employees afforded the opportunity to work under them before the employer turns to others in their place. 'The employer has the economic right to continue operation of his plant * * * (and) may go anywhere for his labor supply, so long as he is guilty of no misconduct in his attempt.' N.L.R.B. v. Bradley Washfountain Co., 192 F.2d 144, 153 (7th Cir. 1951). In the case before us the record fairly discloses that the union men desired to continue working after the installation of new equipment, but that the company expected they would not be willing to do so. Whether this misjudgment on the company's part was created by failure to discuss freely with the union its plans for a change, as the Board and the Wheeler group of petitioners (the individual employees) contend, or whether it was because of the union's refusal to cooperate, as the employer contends, a resolution of this conflict is not necessary to an affirmance of the Board's order based on discriminatory firings.
 
 
 25
 Today's disposition of the case also forestalls for an indeterminate time a final review of the contentions raised by the other petitioners, relating to the discharge of some 'extras' employed at the plant and to the award of back pay for various employees.
 
 
 26
 In its entirety the Board's order seems a fair solution for all concerned. I think it should be enforced.
 
 
 
 [1]
 A few references to these efforts will suffice to show the employer preserved his rights by objections and proffers:
 'I would like to make two points with regard to your ruling. Number one, the complaining parties here were allowed to put in testimony through the Witness Taub concerning the fact that there were no negotiations after March 1, 1959. On the basis of that record, I submit we are entitled to reply.
 'Trial Examiner Plost: I will not take the testimony or change the ruling.'
 At another point in the hearing:
 'Trial Examiner: I will sustain the (Board's) objection. And I will inform counsel that I do not believe that it is our province here to go into the negotiations for this contract, the terms of the contract, the attitude of the parties toward the contract * * * And I won't take any testimony on it.'
 Employer's counsel pressed his point saying:
 'One of the issues involved in this case is motivation. In fact, that may be the principal issue. And the Examiner has ruled and his rulings will be binding upon this hearing. But some day the Court of Appeals may see this case.
 'And I don't ever want to argue before the Court of Appeals that Respondents here did not seek very strenuously to bring out upon the record the subject matter of the four counterproposals and the economic motivation therefor * * *.'
 In addition at various stages employer's counsel made various offers of proof which the Examiner 'rejected.'
 
 
 [2]
 Board counsel seemed to agree with the Examiner, saying at an early point: 'The motivations of the Respondent is one of the principal issues here.'
 
 
 [1]
 Section 8(a)(1) of the National Labor Relations Act, 29 U.S.C.A. 158(a) (1). Relations Act, 29 U.S.C.A. 158(a)(3)
 
 
 [3]
 The Trial Examiner concluded as follows in the Intermediate Report:
 'It is clear that the Respondent intended to rid itself of its Union member employees at the earliest opportunity, else why was the first shift which reported after the expiration date of the contract met by armed guards and a crew of 'strangers' working in their places.'
 
 
 [4]
 Petitioner in his reply brief states: 'In anticipation of an immovable position by the union * * *, the Sun had to take proper precautions to protect itself against a possible strike * * *.' And 'the Sun took these precautions and was reasonably protected when the bargaining began.'
 
 
 [5]
 Although the matter is not free of doubt, it is assumed that the union acquired some knowledge of the company plans about the new equipment; and it is assumed that the company made adequate proffers of proof, as outlined above in the text, during the hearing