INTERNATIONAL BROTHERHOOD OF OPERATIVE POTTERS, AFL–CIO, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

Aztec Ceramics Company, Intervenor.

AZTEC CERAMICS COMPANY, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent,

International Brotherhood of Operative Potters, AFL–CIO, Intervenor.

Nos. 17300, 17463.

United States Court of Appeals District of Columbia Circuit.

Argued May 1, 1963.

Decided June 13, 1963.

Mr. Michael H. Gottesman, Washington, D. C., with whom Messrs. David E. Feller, Elliot Bredhoff and Jerry D. Anker, Washington, D. C., were on the brief, for petitioner in No. 17300 and intervenor in No. 17463.

Mr. Theo. F. Weiss, San Antonio, Tex., with whom Mr. William B. Devaney, Washington, D. C., was on the brief, for petitioner in No. 17463 and intervenor in No. 17300.

Mr. Solomon I. Hirsh, Attorney, N.L.R.B., of the bar of the Supreme Court of Illinois, pro hac vice, by special leave of court, with whom Messrs. Stuart Rothman, Gen. Counsel at the time of argument, Dominick L. Manoli, Assoc. Gen. Counsel, and Marcel Mallet-Prevost, Asst. Gen. Counsel, N.L.R.B., were on the brief, for respondent. Mr. Hans J. Lehmann, Atty., N.L.R.B., also entered an appearance for respondent.

Before BURGER, WRIGHT and McGOWAN, Circuit Judges.

BURGER, Circuit Judge.

These consolidated cases involve cross petitions seeking review and enforcement of an order of the National Labor Relations Board. In No. 17300, the Union, while the complaining party before the Board, seeks review of the single part of the Board's order which is unfavorable to its claim for one employee. In No. 17463, Aztec Ceramics Company, respondent in the Board proceedings, seeks review of a large part of the Board's order. In this case the Board filed a cross petition for enforcement of its order. The petitioner in each of the above cases has been allowed to intervene in the other case. Jurisdiction arises under Sections 10(e) and 10(f) of the National Labor Relations Act, 29 U.S.C. § 160(e) and (f).

The case involves an extended dispute between the Company and the Union from the outset of Union efforts to organize and the Company's opposition; this continued throughout the negotiations following the election and to a degree throughout the hearings before the Board's hearing examiner in the proceedings now under review.

The Board's findings of fact in No. 17463 underlying the Board's determination that the Company committed unfair labor practices in violation of the Act can be summarized as showing that the Company:

(a) engaged in acts of interrogation, in threats of reprisal, in promises of benefits, all in violation of Section 8(a) (1) of the Act;

(b) discriminated against 10 employees [1] in violation of Section 8(a) (3) and (1) of the Act;

(c) engaged in dilatory tactics in failing to supply necessary information requested by the Union, in instituting changes in terms and conditions of employment without notice to or consultation with the Union,

and in otherwise failing to bargain in good faith, all in violation of Section 8(a) (5) and (1) of the Act. The Board also found that a strike which commenced July 12, 1961, was caused by the Company's failure to bargain in good faith and that the Company refused to reinstate the strikers when they abandoned the strike, thus violating Section 8(a) (3) and (1) of the Act.

(d) In No. 17300, the Union's petition, the Board dismissed the complaint that employee Ortega's layoff violated Section 8(a) (3) and (1) of the Act on the grounds of insufficient evidence to sustain a finding of discrimination.

I

██ The treatment of the factual basis for these findings occupies the major portion of the briefs before us. Extended discussion of the conflicting testimony before the examiner and the opposing contentions urged in this court would serve no useful or constructive purpose. It is not uncommon, of course, for the processes of original organization of a union in a new plant to be attended by vigorous advocacy and opposition which become acrimonious at times. Neither is it uncommon for this atmosphere to carry over to some degree into subsequent negotiations for a contract after a hard fought election campaign. We have examined the findings in relation to the pertinent parts of the record before the Examiner on which the Board acted. The Examiner in the first instance was confronted by conflicts in testimony and there was no escape from the necessity of resolving the conflicting evidence. We cannot say that he made an impermissible choice or that the Board's decision and order are not supported by substantial evidence. No citation of authority is needed for the proposition that the test

---

[1]. Employees Buckalew, Leonhardt, Heinemeyer, Willeford, Alvarado, Briseno, Solis, DeLacruz, DeLa Sanchez and Guiterrez.

is not whether we, as triers, would have drawn the same inferences and reached the same conclusions on the evidence as those reached by the Examiner and the Board. In these circumstances our limited scope of review compels affirmance of the Board's action.

 In No. 17300 the Union contends that the Board erred in dismissing the complaint as to the alleged discriminatory layoff of employee Ortega. The testimony on these issues was confusing and conflicting. The Company records which might have afforded a basis for a different resolution by the Examiner and the Board were not put in the record by either party. However the Union claims and the Board concedes that it inadvertently overlooked pertinent evidence in the record which might have led to a contrary result. This is not a matter of raising a new legal point on appeal. The Board is required to act on all the relevant evidence before it. The order of the Board as to Ortega must be vacated and the case remanded for consideration of the claims as to Ortega's reinstatement in light of the evidence admittedly overlooked by the Board. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Cf. Wheeler v. National Labor Relations Board, 114 U.S.App.D.C. 255, 314 F.2d 260 (1963).

## II

 In shaping a remedy the Board not only reinstated with back pay, the discharged employees found to have been subjected to unlawful discrimination, but also awarded interest at 6% on the back

pay from the date it would have been paid absent a discriminatory discharge. The award of back pay is clearly within the scope of traditional Board remedies. See National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 48–49, 57 S.Ct. 615, 81 L.Ed. 893 (1937).

For 25 years more or less the Board has not awarded interest on back pay allowed in connection with reinstatement of discharged employees. Here again the question is not whether we believe the award of interest is an appropriate remedy, but narrowly whether the absence of express statutory provision in the Act precludes the Board from allowing interest as part of the remedial action it fashions. The argument on this score is that only Congress could authorize such remedial action and it failed to do so. So far as we can ascertain the history of the legislation sheds no light and we can only assume Congress gave no thought to the specific issue of interest one way or the other.

 The Company argues that the Board is without power to award interest on back pay. We reject this proposition. First, in the absence of independent evidence of congressional intent, we will not construe reenactment of the labor act in 1947 and 1959 as a manifestation of congressional intent to freeze in the statute the Board's traditional refusal to grant interest on back pay. Rodgers v. United States, 332 U.S. 371, 373, 68 S.Ct. 5, 92 L.Ed. 3 (1947).[2] Second, the absence of express statutory authorization does not necessarily operate as a limitation of power.[3] Third, Congress has given the

2. In Isis Plumbing & Heating Co., 138 N.L.R.B. No. 97 (1962), the Board for the first time awarded interest on back pay, thereby reversing its longstanding policy to the contrary. See Reserve Supply Corp. of L.I., Inc. v. National Labor Relations Board, 317 F.2d 785 (2d Cir., 1963).

3. United States v. United Drill & Tool Corp., 87 U.S.App.D.C. 236, 183 F.2d 998 (1950). Although the statutes involved in the following situations were silent on the question of interest, interest was awarded: to employees on whose behalf

suit was brought under the Walsh-Healey Act, 41 U.S.C. § 36, to recover underpayments by contractors, Mitchell v. Riegel Textile, Inc., 104 U.S.App.D.C. 139, 259 F.2d 954 (1958); and to a veteran who sued under the Universal Military Training and Service Act, 50 U.S.C.App. § 459, for loss of compensation suffered as the result of a wrongful refusal to reemploy him, Travis v. Schwartz Mfg. Co., 216 F.2d 448 (7th Cir. 1954); Loeb v. Kivo, 169 F.2d 346 (2d Cir. 1948), affirming 77 F.Supp. 523 (S.D.N.Y.1947). See comprehensive treatment in Isis Plumbing & Heating Co., supra n. 2.

Board broad discretion in framing remedies which will effectuate the policies of the Act and we cannot say that the Board was without authority to change its long-standing policy. National Labor Relations Board v. Seven-Up Bottling Co., 344 U.S. 344, 73 S.Ct. 287, 97 L.Ed. 377 (1953). Finally, there is no evidence in this particular case that the Board acted arbitrarily in framing its award.

In 1941 the Supreme Court, per Justice Frankfurter, considered a related question: whether the fact that a discriminatorily discharged employee had obtained other equivalent employment precluded the Board from ordering reinstatment as a remedy to undo the discrimination. Pointing out that this remedy did not automatically flow from the Act, he said:

> "A statute expressive of such large public policy as that on which the National Labor Relations Board is based must be broadly phrased and necessarily carries with it the task of administrative application. There is an area plainly covered by the language of the Act and an area no less plainly without it. But in the nature of things Congress could not catalogue all the devices and stratagems for circumventing the policies of the Act. Nor could it define the whole gamut of remedies to effectuate these policies in an infinite variety of specific situations. Congress met these difficulties by leaving the adaptation of means to end the empiric process of administration. The exercise of the process was committed to the Board, subject to limited judicial review. Because the relation of remedy to policy is peculiarly a matter for administrative competence, courts must not enter the allowable area of the Board's discretion and must guard against the danger of sliding unconsciously from the narrow confines of law into the more spacious domain of policy. * * *" Phelps Dodge Corp. v. National Labor Relations Board, 313 U.S. 177, 194, 61 S.Ct. 845, 852, 85 L.Ed. 1271 (1941).

This suggests the broad scope of the powers which the Supreme Court considered were vested in the Board. The fact that the Board has waited 25 years more or less to employ this mechanism is something to consider. While it is true that the purpose of the Board's remedial orders vindicates public rather than private rights, we cannot close our eyes to the reality of the employee's posture in relation to an award of reinstatement. The Board awards him what it finds he should not have been denied. The Act itself treats back pay, once awarded under Section 10(c) of the Act, as a debt "owed to the Board as agent for the injured employees; the Board, and the General Counsel in particular, is a publicly created attorney for the employee in this particular context. See Nathanson v. National Labor Relations Board, 344 U.S. 25, 27–28, 73 S.Ct. 80, 97 L.Ed. 23 (1952).

In the evolution of the law of remedies some things are bound to happen for the "first time." As a supplement to existing remedies long approved we cannot say that the allowance of interest is other than a factor which effectuates the policies of the Act for it is plainly in the direction of making the employee whole. Virginia Electric & Power Co. v. National Labor Relations Board, 319 U.S. 533, 540–541, 63 S.Ct. 1214, 87 L.Ed. 1568 (1943). We cannot regard changes in remedial mechanisms as beyond the Board's powers so long as they reasonably effectuate the congressional policies underlying the statutory scheme. National Labor Relations Board v. Seven-Up Bottling Co., supra.

No. 17463 affirmed.

No. 17300 remanded for further proceedings.